UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MESHA GRAY,<br>on behalf of her minor child, M.B.,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:  Civil Action No. 07-0013 (RJL)<br>:<br>:<br>:<br>:<br>: |

**DEFENDANT'S FURTHER MOTION TO DISMISS,
<u>AND FOR ATTORNEYS' FEES</u>**

The Defendant, by counsel, hereby moves the Court to dismiss the captioned complaint, and to award Defendant's attorneys' fees.

As explained in the accompanying supporting memorandum, the Plaintiff having finally provided evidence of payment of the amount for which reimbursement is sought, and the amount at issue now having been paid to the Plaintiff, this action is now moot. Moreover, to the extent the filing and maintenance of this action was "frivolous, unreasonable or without foundation," an award of attorneys' fees against Plaintiff's counsel is appropriate under the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §1415(i)(3)(B)(i)(II).

An appropriate proposed order is also provided herewith.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

2

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

*/s/ Amy Caspari*
Amy Caspari [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794

July 27, 2007                    amy.caspari@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MESHA GRAY, <br> on behalf of her minor child, M.B., <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : Civil Action No. 07-0013 (RJL) <br> : <br> : <br> : <br> : <br> : |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S FURTHER MOTION TO DISMISS,
AND FOR ATTORNEYS' FEES**

While cast as an appeal of an administrative decision pursuant to the Individuals with Disabilities Improvement Act of 2004, 20 U.S.C. §§ 1400 et seq. ("IDEIA"), this case – seeking reimbursement of $687.44 – has always been just about the Plaintiff's refusal to provide some proof of payment.

Two weeks after the June 14, 2007, hearing session before this Court (and after undersigned counsel had located the service provider directly in order to obtain proof of payment), Plaintiff's counsel, on June 28, 2007, furnished Defendant's counsel a ledger sheet from the service provider relating to the services at issue. On that basis, DCPS uttered a check payable to the Plaintiff in the amount of $567.44 – the full amount remaining at issue here, $120.00 have been reimbursed earlier (see Status Hearing Transcript, p. 3, lines 23-25 and Declaration of Olonda Oliver, filed herein April 27, 2007) – and that check was delivered to Plaintiff's counsel's office on July 26, 2007.

3

Even assuming there had ever been any legal merit to this case (but see Defendant's March 16, 2007, Motion to Dismiss), the amount sought has now been paid, there is no longer a justiciable case or controversy before this Court, and dismissal of the complaint is required. Moreover, to the extent the filing and pursuit of this action was "frivolous, unreasonable or without foundation," an award of attorneys' fees against Plaintiff's counsel is appropriate under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §1415(i)(3)(B)(i)(II).

## THE RELEVANT FACTUAL BACKGROUND

### I. The Administrative Proceedings Involved.

More than three and one half years ago, in a December 3, 2003, Hearing Officer's Determination ("HOD") (Administrative Record, pp. 13-15), District of Columbia Public Schools ("DCPS") was ordered to reimburse Plaintiff for independent speech and language therapy sessions said to have been provided the student during the 2001-2002 school year. That HOD directed reimbursement to be made "upon receipt of the paid invoices from the parent." Administrative Record, p. 15.

Two and one half years later, in June, 2006, Plaintiff's counsel wrote DCPS requesting reimbursement of $687.44 for the sessions. Complaint, p. 2, line 7. However, the invoices attached to the letter only showed that $120.00 had been paid by the Plaintiff. Administrative Record, pp. 18-23. Plaintiff thereafter initiated an administrative hearing, alleging that DCPS had received the required paperwork from the parent, but had never responded to the reimbursement request. Administrative Record, p. 59-60. Plaintiff requested in this new hearing that the prior HOD be "enforced." Id.

At the pre-hearing resolution meeting held August 25, 2006, DCPS counsel indicated to Plaintiff's counsel DCPS' willingness to pay the requested $687.44, believing (erroneously, as it turned out) that the documents provided by the Plaintiff demonstrated payment of the full amount claimed. Administrative Record, pp. 45-46. On later, and closer, examination of the invoices, however, it appeared those documents only confirmed payment of $120.00 (for which the Plaintiff has now been reimbursed), and that only that amount could be paid by the District in the absence of comparable confirmation of payment of the remainder. Administrative Record, p. 65.

The matter was taken up at the administrative hearing held October 6, 2006. In lieu of providing proof of payment, Plaintiff's counsel vociferously argued that since, erroneously or not, DCPS counsel had stated at the resolution session that DCPS would pay the full amount claimed, DCPS could not now claim the supporting documentation was inadequate, or otherwise decline payment. Administrative Record Transcript, pp. 80-84.

After lengthy discussion, the Hearing Officer rejected that view, and made clear what needed simply to be done (Administrative Record Transcript, pp. 103-104):

> HEARING OFFICER DUBOW:  My role is to enforce the hearing – prior hearing officer's determination.  The prior hearing officer – the prior hearing officer, he wrote that it's to be – that there has to be written documentation by the parent to be provided to get reimbursement.  The only written documentation is the receipts from the provider for $12.00, which DCPs is willing to pay.
>
> MR. TYRKA: Well –
>
> HEARING OFFICER DUBOW:  How am I supposed – how am I supposed to order any more than that? Because based on – based on – if I was to comply with the order, the order is pay with documentation.  The only documentation I have is for $120,00.  So, all you have to do is – is get – go back to this provider and go through, as it's apparent that this is

5

> very, very, very, very old, to go back to this provider and get from them what their, you know, receipts that what she's – they've been paid from this person, and – the, your parent. And then submit that.[1]

At the conclusion of yet further discussion, and examination of the Plaintiff, Plaintiff's counsel stated what he believed would be the appropriate disposition (Administrative Record Transcript, pp. 122-123):

> MR. TYRKA: . . . I think an appropriate HOD might be DCPS issue $120.00 check, which again we see no evidence that they've issued or intended to issue. Two, upon receipt from the parent of a statement, an appropriate statement by Ms. B[y]rd [the service provider], DCPS to issue a check for the remaining funds, as per their letter.
>
> HEARING OFFICER DUBOW: I don't think DCPs has any problem with that.
>
> [DCPS COUNSEL]: Of course, that was the [inaudible] anyway.
>
> HEARING OFFICER DUBOW: If the proper documentation is provided, then there should be no problem. . . .

The October 6, 2006, HOD nominally being appealed here reflected just that relief. Administrative Record, pp. 2-4.

Once more, however, instead of endeavoring to obtain receipts or other evidence of payment by the Plaintiff, Plaintiff's counsel, who had received the very HOD relief he had said would be acceptable, filed suit in this Court three months later, on January 6, 2007.

## II.   The Early Court Proceedings.

After the filing of the complaint, Defendant's counsel initiated efforts in early February to obviate the need for further litigation. Seeing the basic problem as simply

---

[1] See also Record Transcript, pp. 110-111:
  HEARING OFFICER DUBOW: Mr. Tyrka, I understand but you're making a mountain out of a molehill here, and I'm going to tell you this right now. The only documentation I have in the record pursuant to the [earlier] HOD is to pay $120.00. . . .

6

the continued lack of some evidence of payment, undersigned counsel suggested that Mr. Tyrka see if he could get any such documentation from his client. Indeed, in a telephone conference between Mr. Tyrka and undersigned counsel for the Defendant (both Ms. Caspari and Mr. Taptich) on or around the first week of February, 2007, it was suggested that even if no specific receipts were available, any other reasonable evidence that payment had been made would permit the District to issue a check; in the absence of anything else, just a sworn statement by the Plaintiff attesting some details of payment might be adequate. Defendant's counsel said they'd see what would be adequate for the DCPS financial office to issue a check, and Plaintiff's counsel indicated he'd check with his client.

In a follow-up February 13 email, Ms. Caspari inquired whether Mr. Tyrka had made any progress concerning receipts; she also indicated that inquiries concerning the finance office's requirements had not been fruitful to that point. In an email to Ms. Caspari on February 15 concerning other matters, Mr. Tyrka responded that he believed the case would be "proceeding normally." No information on payment receipts was provided.

Nearly three months later, on May 8, during the course of a telephone conversation principally devoted to the contents of the Defendant's reply to the Plaintiff's April 3, 2007, opposition to the Defendant's earlier motion to dismiss, Mr. Tyrka inquired of Ms. Caspari whether an affidavit from the Plaintiff would still suffice. Ms. Caspari, perceiving Mr. Tyrka's February 15 email to have been a rejection of her earlier efforts to obtain payment-confirming documentation, responded in the negative. On the following day, however, after consultation with her supervisor, Ms. Caspari advised Mr.

7

Tyrka that indeed the offer to pay based on an affidavit remained open, and she invited discussion on how he wanted to proceed. Oddly, Mr. Tyrka later that day responded that he was unaware of any "offer from you regarding an affidavit." By return email that day, Ms. Caspari restated the details of the February telephone discussion of a possible affidavit-for-payment resolution. And following a subsequent request for specifics by Mr. Tyrka, Ms. Caspari, on May 15, forwarded to Mr. Tyrka a draft form of an affidavit for the Plaintiff that would be adequate.

No further progress on an affidavit was made; communications from Mr. Tyrka devolved to contentious complaints that emails concerning settlement of the case were not being properly labeled as Rule 408 communications, and anger that Defendant's counsel were alluding in pleadings to their efforts to conclude the case by payment.

### III. The June 14 Status Hearing.

At the status hearing held June 14, the Court inquired about the status of Plaintiff counsel's efforts to get documentation of payment:

> It sounds like it is, frankly, very simple if you could just get some kind of evidence that would demonstrate that the receipts that were handed in were actually paid. It would resolve [the District's] dilemma. Is that a problem?

Status Hearing transcript, p. 12. Mr. Tyrka's direct response to that question was,

> [A]t this point, no, there is no more documentation from the [service] provider that can be obtained.

Id. The Court pressed further:

> THE COURT: Are these providers still in business?
>
> MR. TYRKA: I can only rely on what I have understood from my client, and they cannot be contacted.
>
> THE COURT: They can't be contacted?

8

> MR. TYRKA: Well, they can't be reached. It is not they. It is one person. She cannot be reached.
>
> THE COURT: Did she move away or something?
>
> MR. TYRKA: The number that my client had is no longer good.

Status Hearing transcript, pp. 12-13.

### IV.   The Post-Status Hearing Events.

In light of the court's chiding at the June 14 hearing, and having abandoned hope that Plaintiff's counsel would himself pursue the matter, Ms. Caspari the next day called the telephone number on the four invoices at issue (Administrative Record, pp. 70, 73, 75, 76); the call was routed to a voice message that indicated all callers should call Ms. Byrd (the service provider involved here) directly at 202-286-6713. When Ms. Caspari called that number, she was routed to a voicemail in which she identified herself and the purpose for the call, and asked that Ms. Byrd return the call. Within about 10 minutes, Ms. Byrd called back. Ms. Caspari explained the reason for the call, and provided Ms. Byrd the invoice numbers and amounts, and asked Ms. Byrd whether those invoices had been paid. In response to Ms. Byrd's request, Ms. Caspari faxed the invoices to Ms. Byrd that day.

Ms. Byrd called Ms. Caspari again at some point prior to June 18, 2007, and left a phone message that all of the invoices had been paid. By return call on June 18, Ms. Caspari requested that the information Ms. Byrd had left in the phone message (and any additional payment information) be sent in an email. Ms. Byrd agreed, but said she'd need first to forward the invoices for her accountant's verification of payment details.

On Friday morning, June 22, Ms. Byrd emailed Ms. Caspari information on payments on three of the invoices. A further call was made to Ms. Byrd on June 25,

9

asking if copies of records of payment might be provided, so that the necessary reimbursement paperwork could be processed. In that call, Ms. Byrd indicated that she was reluctant to release such records without the consent of the parent, and that she had just had an inquiry from a lawyer for the parent in the same regard. District counsel told Ms. Byrd that they understood her concern, that if she had been contacted by the parent's attorney, she should deal with him in that regard, and that we would look to him for documents instead. Ms. Caspari immediately emailed Mr. Tyrka, advising him that she had just learned that he was in contact with Ms. Byrd, and asked for the needed documentation.

On June 28, Mr. Tyrka faxed to Ms. Caspari the attached ProTALK, Inc. accounting ledger sheet that included invoice and payment information for Ms. Byrd's services. After review of the document and comparison of the data with information included in the case record, Defendant's counsel consulted with DCPS, and the payment process was initiated. On July 25, a check for $567.44 was issued in the name of the Plaintiff. And on July 26, that check was hand delivered to Plaintiff's counsel's office (copy of transmittal letter attached).

## ARGUMENT

I. **Payment of the Claimed Amount for Reimbursement Having Been Made, this Action is Moot.**

In <u>United States Parole Commission v. Geraghty,</u> 445 U.S. 388, 395-396 (1980), the Supreme Court made clear that –

> Article III of the Constitution limits federal "judicial Power," that is, federal-court jurisdiction, to "Cases" and "Controversies." This case-or-controversy limitation serves "two complementary" purposes. <u>Flast v. Cohen,</u> 392 U.S. 83, 95 (1968). It limits the business of federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the

> judicial process," and it defines the "role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." Ibid. Likewise, mootness has two aspects: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).

Similarly, in United States of America, v. Weston, 194 F.3d 145, 147-148 (D.C. Cir. 1999), the Circuit Court stated:

> "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" Preiser v. Newkirk, 422 U.S. 395, 401, 45 L. Ed. 2d 272, 95 S. Ct. 2330 (1975) (citation omitted). "For that reason, if [] events occur while a case is pending on appeal that make[] it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed [as moot]." Church of Scientology of California v. United States, 506 U.S. 9, 12, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992). [Emphasis added.]

So here, events have transpired such that a case or controversy no longer exists. As noted initially, the relief sought in this suit was reimbursement to the Plaintiff of $687.44 for certain educational services. As indicated earlier, the $120 to which the HOD referred was paid on February 28, 2007. See Declaration of Olonda Oliver, filed herein April 27, 2007. As explained above, a check for the remaining $567.44 was delivered to Plaintiff's counsel on July 26. Even assuming it ever had any merit, this case is now moot, and must be dismissed. See Board of School Commissioners of the City of Indianapolis v. Jacobs, 420 U.S. 128, 129 (1975).

**II.   Defendant's Attorneys' Fees Should be Assessed
       Against Plaintiff's Counsel under IDEIA.**

The 2004 amendments to the IDEIA added the following to the attorneys' fees provisions of the statute:

> (i) . . . . In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs--
>    . . . .

11

>    (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; . . .

20 U.S.C. §1415(i)(3)(B).

The Defendant believes that the factual background set forth earlier demonstrates that the entirety of this court litigation was "frivolous, unreasonable, or without foundation" under 20 U.S.C. §1415(i)(3)(B)(i)(II).  Moreover, even if the complaint were deemed defensible when initially filed, Plaintiff's counsel's continuing prosecution of the case after early efforts by the Defendant's counsel to obviate further contention by obtaining some confirmation of payment of the amounts for which reimbursement was sought – "after the litigation clearly became frivolous, unreasonable, or without foundation" – also fell within the meaning of that provision.[2]

From at least the time of the administrative hearing in September, 2006, instead of devoting himself to obtaining some confirming documentation that would permit the District to reimburse the Plaintiff, Plaintiff's counsel appears to have focused principally on litigation.  From the time of the Defendant's initial overtures for ways to implement payment, Plaintiff's counsel repeatedly resisted – or simply failed reasonably to respond to – Defendant's counsel's efforts to amicably resolve the matter.  Even Defendant's

---

[2] Compare, e.g., City of Roseville v. Norton, 219 F. Supp. 2d 130, 171 (D.D.C. 2002), where the Court recently noted the similar requirements of Rule 11 of the Federal Rules:

> When an attorney files a complaint in federal court, she certifies to the Court that the legal arguments contained therein, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11.

offer to accept an affidavit from the Plaintiff – and the provision of a draft such affidavit – went ignored or unacted on.

At the June 14 hearing conference, Plaintiff's counsel advised the Court that he had been unable to reach the service provider to get the needed documentation. But one day later, it took Defendant's counsel – in light of the Court's chiding, and having abandoned hope that Plaintiff's counsel would seriously pursue the matter – only one call to a telephone number on the provider invoices Plaintiff's counsel had had for more than a year to establish communications with Ms. Byrd, the service provider involved. And obtaining the needed documents from Ms. Byrd took less than two weeks thereafter. It is now obvious that, had Plaintiff's counsel exercised minimum diligence subsequent to the October, 2006, HOD, rather than devising legal arguments and filings, none of this litigation would have been required.[3] Either Ms. Byrd's documents would have been obtained, or an offered affidavit could have been executed, so that the reimbursement at issue could have been accomplished. But instead, Plaintiff's counsel has taken much of the time of the Court and the Defendant during the past six months in unnecessary litigation. For $567.44.

Accordingly, the Defendant requests that the Court, in dismissing this action, assess Plaintiff's counsel $2,000 for Defendant's attorneys' fees pursuant to the IDEIA. In fact, Defendant's attorneys have devoted more than 100 hours to this litigation to date, and the actual fees, even computed at a nominal $100 per hour rate, would far exceed that

---

[3] This is not the first time that Plaintiff's counsel's preference for litigation over amicable issue resolution has come to light. At least twice before, courts in this jurisdiction have noted counsel's unnecessary pursuit of litigation (e.g., Lesesne v. District of Columbia, 2005 U.S.Dist.LEXIS 35699 *14-15, 26-27 (D.D.C. 2005), aff'd, 447 F.3d 828 (D.C. Cir. 2006)), and inaccurate characterizations of facts in the course of litigation. (Lesesne v. District of Columbia, 447 F.3d 828, 832-33 (D.C. Cir. 2006)).

figure. The Defendant submits, however, that it is important that the Court make clear by the award of such fees that it will not tolerate such "frivolous, unreasonable, or [groundless]" use of its processes in the future, even though the amount awarded is nominal.

## CONCLUSION

This case need never to have been filed. And it *should* never have been filed. It has been obvious to two administrative hearing officers and to this Court that the simple need was for some evidence of payment of some $700.00. Instead of trying to resolve this three-year-old matter by obtaining evidence of payment (something Defendant's counsel was able to initiate with a single telephone call) – or by pursuit of the Defendant's offer to accept an affidavit from his client – Plaintiff's counsel chose instead to take the time of this Court, and of the Defendant, in a contrived legal exercise, failing even reasonably to respond to the Defendant's good faith efforts to resolve this minor matter. And to the extent the Defendant is charged with safeguarding the public fisc, it was not able, in the absence of some evidence of payment, to convey public funds to the Plaintiff.

To the extent the reimbursement amount at issue has now been paid, the action is moot, the Court is without jurisdiction to entertain it further, and the complaint must be dismissed. To the extent the pursuit of this case was "frivolous, unreasonable, or without foundation," the Court should award $2,000 in the Defendant's attorneys' fees against Plaintiff's counsel pursuant to 20 U.S.C. §1415(i)(3)(B)(i)(II).

        Respectfully submitted,

        LINDA SINGER
        Attorney General
        for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        */s/ Edward P. Taptich*
        EDWARD P. TAPTICH [#012914]
        Chief, Equity Section 2

        */s/ Amy Caspari*
        Amy Caspari [#488968]
        Assistant Attorney General
        441 Fourth Street, N.W.
        Sixth Floor South
        Washington, D.C. 20001
        (202) 724-7794
July 27, 2007        amy.caspari@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MESHA GRAY,<br>on behalf of her minor child, M.B., :<br>Plaintiff, :<br>v. :<br>DISTRICT OF COLUMBIA, :<br>Defendant. : | Civil Action No. 07-0013 (RJL) |

### **ORDER**

On consideration of the Defendant's July 27, 2007, Further Motion to Dismiss and for Attorneys' Fees, the Plaintiff's response thereto, and the record in this proceeding, it is

ORDERED, that the Defendant's motions are granted;

FURTHER ORDERED, that the complaint herein is dismissed as moot; and it is

FURTHER ORDERED, that Defendant's attorneys' fees in the amount of $2,000 are awarded against Plaintiff's counsel, payment to be made to the District of Columbia by Plaintiff's counsel by check delivered to Defendant's counsel within 60 days of this Order.

_____
UNITED STATES DISTRICT COURT JUDGE

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Office of the Attorney General



**Civil Litigation Division**

**To:** Douglas Tyrka, Tyrka & Associates
**Fr:** Amy Caspari, Assistant Attorney General, District of Columbia
**Dt:** July 26, 2007
**Re:** Hand delivery of check in the matter of <u>Mesha Gray v. District of Columbia,</u> Civil Action No. 07-0013. (RJL).

Dear Tyrka & Associates,

Transmitted herewith is a District of Columbia check to your client relating to the referenced case, in satisfaction of the amount of reimbursement sought, now that the documentation of payment has been provided.

<u>Received:</u>

Name: _Camille McKenzie_

Signature: _Camille McK[...]_

Date: _7/26/07_

Thank you.

Amy Caspari

_Amy Caspari_

06/25/07

## ProTALK, Inc.
### Customer Charges & Payments!
All Transactions

| Type | Date | Num | Memo | Amount |
|---|---|---|---|---|
| **Gray, Mesha** | | | | |
| **Monnae Brown** | | | | |
| Payment | 11/8/01 | | copay 502 | -20.00 |
| Invoice | 11/10/01 | 502 | 11/6,10 | 101.86 |
| Invoice | 11/16/01 | 509 | 11/13,17 | 101.86 |
| Payment | 11/16/01 | | cd-pay for Inv. 509 | -20.00 |
| Invoice | 11/21/01 | 516 | Inv. 11/20, 27 | 101.86 |
| Payment | 11/23/01 | | copay11/20 inv. 516 | -10.00 |
| Payment | 11/29/01 | | copay for 516, 11/27 | -10.00 |
| Invoice | 12/20/01 | 11489... | Inv. 521, copay 12/19, 12/2... | -81.86 |
| Payment | 12/20/01 | | Inv. 516 11/20,27/01 | -20.00 |
| Payment | 12/21/01 | 521 | Inv. 12/1, 19,20 | 152.79 |
| Payment | 12/23/01 | | copay for 12/01/01 | -20.00 |
| Invoice | 12/31/01 | 533 | Ins. co. payment 11/6,10,1... | -10.00 |
| Payment | 12/31/01 | 11450... | Cigna 11/6,10,13,17 | 40.00 |
| Payment | 2/2/02 | | copay 1/26, 29 | -203.72 |
| Invoice | 2/4/02 | 557 | 1/26, 28, 1/30, 2/2, 4, 11 | -20.00 |
| Payment | 2/7/02 | | I#557, 1/30, 2/2,4 | 305.58 |
| Payment | 2/11/02 | 17135... | I#521 12/1,19,20 | -30.00 |
| Invoice | 2/17/02 | | cash copay for 2/11/02 | -122.79 |
| Payment | 3/8/02 | 578 | 2/14/02, 3/1/02 | -10.00 |
| Payment | 3/25/02 | 501A | Split payment I#578 $10for ... | 125.93 |
| Invoice | 3/25/02 | 588 | 3/15/02 | -85.00 |
| Payment | 3/25/02 | 501B | Split payment with 578; I# ... | 75.00 |
| Payment | 3/31/02 | 17443... | Cigna:Inv.557,1/26, 28, 30,... | -75.00 |
| Payment | 4/24/02 | 83505... | Inv.578 2/14 | -245.58 |
| | | | | -40.93 |
| Total Monnae Brown | | | | 0.00 |
| Total Gray, Mesha | | | | 0.00 |
| **TOTAL** | | | | **0.00** |